# NO. 12-14-00184-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DEMETRIUS KELLUM,* *APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Demetrius Kellum appeals his conviction for aggravated assault. In one issue, Appellant contends that the evidence is legally insufficient to support the jury's implied rejection of his self-defense claim. We affirm.

### BACKGROUND

Appellant and his girlfriend, Ruby Lowrie, were having drinks with Diane Marvels and her boyfriend, Windell Williams, when the two couples decided to go to a club. While they were in the club, Williams was involved in a confrontation. As a result, Williams was either asked to leave by club personnel or decided to leave voluntarily. Because they had traveled to the club in Marvels's vehicle, they all left together.

Marvels began driving everyone back to Appellant and Lowrie's home. Appellant was unhappy that Williams's behavior caused everyone to leave the club early, and they engaged in a verbal altercation. When Marvels stopped the vehicle at a stop sign, Appellant and Williams exited the vehicle and began fighting. During the fight, Appellant cut Williams several times with some type of sharp-edged weapon such as a knife or razor. At that point, Appellant and Williams stopped fighting and returned to the vehicle.

When the group reached Appellant and Lowrie's home, Williams again exited the vehicle, and he and Appellant engaged in another verbal altercation. Marvels and Lowrie were able to defuse the argument without any additional physical combat. Marvels and Williams then left.

Appellant severely injured Williams during the fight, and Williams eventually sought medical attention at Trinity Mother Frances Hospital in Tyler. His treating physician, Dr. Sean Denham, treated him for multiple lacerations. The two most concerning injuries Williams sustained were a laceration under his chin and a laceration to the left abdomen.

After returning from the club and the fight, Appellant went to a friend's house. The Tyler Police Department officers investigating the incident wanted to speak with Appellant. After being given the address of Appellant's friend, several Tyler police officers went to make contact with Appellant. When they knocked at the front door, Appellant tried to leave the premises through the back exit. However, a police officer stationed at the back of the premises apprehended Appellant. The officers then searched Appellant and found him in possession of a red knife.

Appellant was arrested and indicted for the aggravated assault of Williams, enhanced to the punishment level of a first degree felony due to Appellant's prior felony conviction. At trial, Appellant argued that he was not guilty because he acted only in self-defense. The jury found Appellant guilty of aggravated assault. Appellant had elected that the trial court assess punishment. The trial court sentenced Appellant to imprisonment for life, and this appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his sole issue, Appellant contends that the evidence is insufficient to support a finding beyond reasonable doubt that Appellant was not acting in self-defense. Specifically, Appellant argues that no rational factfinder could have concluded beyond a reasonable doubt that Appellant acted in any manner other than in self-defense.

### Standard of Review and Applicable Law

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim.

2

App. 2010). The issue of self-defense is a fact issue to be determined by the jury, and a jury's verdict of guilt is an implicit finding that it rejected a defendant's self-defense theory. *Saxton v. State*, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991). Accordingly, the jury's implicit rejection of a defendant's self-defense theory must be supported by legally sufficient evidence. *Id*. at 914. In reviewing the sufficiency of the evidence to support the jury's rejection of self-defense, we examine all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and also could have found against the defendant on the self-defense issue beyond a reasonable doubt. *Id*.

When a defendant raises self-defense, he bears the burden of producing some evidence to support his defense. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing *Saxton*, 804 S.W.2d at 913–14). Once the defendant produces some evidence supporting his defense, the state then bears the burden of persuasion to "disprove the raised defense." *Id.* The burden of persuasion does not require the production of evidence; it requires only that the state prove its case beyond a reasonable doubt. *Id.* Moreover, "[d]efensive evidence which is merely consistent with the physical evidence at the scene of the alleged offense will not render the [s]tate's evidence insufficient since the credibility determination of such evidence is solely within the jury's province[,] and the jury is free to accept or reject the defensive evidence." *Saxton*, 804 S.W.2d at 914. When the evidence is conflicting, we generally defer to the weight the jury gave to the contradictory testimonial evidence. *See Bundy v. State*, 280 S.W.3d 425, 435 (Tex. App.—Fort Worth 2009, pet. ref'd) (finding evidence factually sufficient in face of contradictory testimonial evidence).

A person acts in self-defense in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect him from the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(a) (West 2011). As applicable here, a person uses deadly force in self-defense when and to the degree he believes deadly force is immediately necessary. *Id*. § 9.32(a)(2). A "reasonable belief" is that which "would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42) (West Supp. 2014).

3

**Application**

Marvels, Lowrie, and Williams testified at trial. All three agreed that Appellant and Williams engaged in a physical altercation. However, they differed on some of the particulars that gave rise to the confrontation.

Marvels testified that Williams "had got put out" of the club and caused everyone to leave. Neither she nor Williams were upset that they were leaving the club, but according to Marvels, Appellant was upset. Appellant and Williams began arguing as they were getting into Marvels's vehicle. Shortly thereafter, she stopped at a stop sign, and both men exited the vehicle at the same time. Marvels was certain that each man got out of her vehicle of his own free will to fight. Marvels did not know who swung first, but she saw both men swinging at each other. She said they fell to the ground with Appellant on top of Williams. The fight quickly ended, and both men returned to her vehicle.

Lowrie testified that she saw Williams arguing with a bouncer in the club. She said that club personnel requested Appellant's assistance in calming Williams. She stated that Appellant's assistance was fruitless, and the group left the club. Lowrie did not know if Williams had been asked to leave or if everyone left voluntarily. She further stated that Williams was yelling at Appellant as they were leaving. As Marvels drove, both Williams and Appellant continued the argument. Lowrie further claimed that, when Marvels stopped at a stop sign, Williams jumped out of the vehicle, opened Appellant's door, and pulled Appellant out of the vehicle to fight. Appellant and Williams then fought. Lowrie also could not say who threw the first punch. But she agreed that the fight quickly ended, and both men returned to Marvels's vehicle.

Lowrie stated that Appellant would have been seriously injured if he had not defended himself. Lowrie further testified that she was not afraid of Williams. She then changed her testimony and stated that she was afraid of Williams, but she was "not worried about [him]." In her words, Lowrie continued to ride in Marvels's vehicle after the fight "[b]ecause I knew my husband was there, my future husband. That's why I wasn't afraid of [Williams]."

The State also presented evidence that Lowrie told one of the investigating officers on the morning after the incident that Appellant and Williams exited the vehicle at the same time. This evidence controverts her testimony at trial that Williams opened Appellant's door and pulled him out of the vehicle.

4

Williams testified that Appellant was upset that they had to leave the club early. He further stated that when Marvels stopped the vehicle at a stop sign, both Appellant and Williams exited the vehicle to fight. Williams claimed that although unstated, it was understood that Appellant and he were going to fight when the vehicle stopped. Williams further claimed that each opened his own door and voluntarily exited the vehicle. Williams and Appellant then began fighting, but Williams fell and noticed that he was bleeding. Williams did not see that Appellant had a weapon, but he knew "all the blood I'm seeing is not coming from nobody punching." He then realized that he had been cut, at which point the fight stopped. Williams testified that he believed Appellant cut him.

The State presented evidence that Williams sustained significant injuries during his physical altercation with Appellant. The State further presented evidence that Appellant sustained no injuries, or only slight injuries, during the altercation.

It was the province of the jury to determine which of this conflicting testimony to credit and which to reject. *See Bundy*, 280 S.W.3d at 435. From the testimony, the jury could have determined that (1) Appellant willingly engaged in a physical confrontation with Williams, (2) Appellant was armed with a razor or knife and Williams was unarmed, and (3) Appellant cut Williams with a razor or knife when the force was not immediately necessary to protect Appellant from Williams. *See Bradshaw v. State*, 320 S.W.2d 833, 834 (Tex. Crim. App. 1959) (holding evidence sufficient to support conviction where defendant cut unarmed combatant).

After viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found the essential elements of the offense and also could have found against Appellant on his self-defense issue beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. Therefore, we hold that the evidence is sufficient to support the jury's implicit rejection of Appellant's self-defense claim. *See id*. We overrule Appellant's sole issue.

### DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered April 30, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*
(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 30, 2015**

**NO. 12-14-00184-CR**

**DEMETRIUS KELLUM,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-1918-13)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*